## DOWNING *v.* MARSHALL.

September, 1863.

In determining what part of a testator's property is to be resorted to for payment of debts, a plain intention, gathered from the will, that certain personal property shall be treated as real, must be regarded as effecting a conversion thereof, and specific legacies must be resorted to before chattels so converted are applied.

The testator, after certain specific bequests, gave the residue of his estate, both real and personal, to his executors in trust, and directed them to continue his manufacturing establishments in operation during the lives of certain beneficiaries, and distribute the income, and, on the termination of such lives, sell the same and distribute the proceeds, in execution of the trusts. *Held*, 1. That machinery in the factory which would otherwise have been regarded as personal assets under the Revised Statutes, could not be applied to the payment of debts, other than

Downing *v.* Marshall.

those connected with the factories, until after the specific legacies had been exhausted.

2. That liabilities arising from testator's contracts relating to the machinery should be satisfied from the income of the trust property.

Under such a will the executors should keep their accounts with the trust property, as trustees, distinct from their accounts as executors, and in their action to obtain a construction of the will and directions how to administer it, the court will not give directions as to matters left to their discretion as trustees.

The court will not direct assets to be retained to await disputed claims not in litigation, but leave the executors to protect themselver under the statute.

Where executors have not the legal title but only a power in trust, if the trust is declared void, there is no necessity of a conveyance to the heirs.

But if the power is void only as to beneficiaries entitled to a small share of the proceeds, it may be upheld as to the entire property, the heir being entitled to take such share of the proceeds, on the exercise of the power.

The will directed the executors to operate certain factories, which consti tuted a part of the residuum devised to them in trust, during the lim- itation, or so long within that period as in their discretion could be done without injury to the interests of the estate. *Held,* that this did not im- ply a power to sell, before the expiration of the period limited, but only gave a discretion to supend business.

The will gave a house to an imbecile son of testator, and directed that an executor should have one thousand dollars per annum, and should, occupy the house with the son, and pay the joint household expenses out of the bequests to the son. *Held,* that by the death of the son be- fore the testator, the latter provisions became inoperative, and the court could not, in construing the will, award the executor a compensation in money in addition to the one thousand dollars.

John W. Downing and others, executors of the will of Benjamin Marshall, deceased, brought this action against James E. Marshall and others interested in the estate, alleging that the next of kin and heirs-at-law claimed that certain trusts created by the will were void, and raised questions in respect to its construction and effect in other respects, and that plaintiffs were advised by counsel that they could not safely execute the provisions of the will without a judicial construction thereof, and therefore asked the judgment of the court thereon. The questions on the validity of the trusts were determined by this court in 1861. 23 *N. Y.* 368. On the second trial, in 1862, the

court below found that the personal property— other than household furniture, plate, and apparel, which was specifically bequeathed by the will, and a mortgage for one hundred and forty five thousand three hundred and fifty-six dollars, which was also specifically bequeathed, and machinery and loose property in and about the testator's factories (establishments which the will directed the executors to carry on for a time)—was insufficient to pay the debts; and adjudged the legatees of the household goods and the mortgage, respectively, to be entitled to those articles; and that the other personal property, including machinery in the factories, not cut and fitted, or permanently fastened, to the buildings, must be sold, for the payment of costs, expenses and debts; and if the latter were insufficient for the purpose, resort might be had to the household goods and the mortgage, but not otherwise. The judgment went upon the view that the intent which is material in determining the question whether such property is personal or real, is the intent of the party affixing it; and the terms of the instrument of transfer or the advantage of the annexation to the beneficial enjoyment of the realty, are not material on the question whether the articles affixed are in law real or personal assets.

Other provisions of the judgment, as well as the substance of the will, stripped only of matters of description, appear in the opinion.

The testator died in 1858. The son for whom provision had been made by clause 3 of the will died in 1857.

Both parties appealed.

*D. L. Seymour*, for the executors, plaintiffs.

*Marshall S. Bidwell*, for the Bible and Missionary Societies.

*George N. Titus*, for the American Tract Society.

*John K. Porter* and *Martin I. Townsend*, for the Marshalls.

*John H. Reynolds*, for the Marshall Infirmary.

BY THE COURT.—MARVIN, J.—The opinions delivered by COMSTOCK, Ch. J., and DENIO, J., when the case was in this

court at a previous term, and upon which its decision was made, are reported in 23 *N. Y.* 368, *et seq.* Before consulting these opinions, with a view to ascertain what questions have been settled, as the law of this case, it will contribute. to a better understanding of them, and of the questions now presented, if a brief synopsis of the will is presented, so far as to show its general scheme. It was executed April 6, 1853, at Troy, the residence of the testator, who possessed a large real and personal estate, had no wife, and only one child. By the first clause, he directs his executors, as soon as may be after his decease, out of any personal property that should come to their hands, to pay all his just debts and funeral expenses. By the second clause, he gives, &c., to his son, John Stanton Marshall, a certain dwelling-house and lot in Troy, with all his plate, household furniture and wearing apparel, to have, &c., during his life; and in case he should die, leaving lawful issue, then to his heirs. By the third clause, he gives, &c., a bond and mortgage, executed by one Walcott, to him, and the proceeds thereof, one-third to his executors in trust, &c., to support his (the testator's) son during his life; and if he should die, leaving lawful issue, then to such issue. One equal third part of the bond and mortgage, &c., in equal shares, to the children of a brother, named, and one-third to the children of another brother, named, &c. By the fourth clause, he gives, &c., to his executors, all the rest and residue of all his real and personal estate of which he should die seized or possessed, in trust, for the uses, objects and purposes in the will specified. Fifth, he then directs his executors to continue in operation for the benefit of his estate, in such manner as they should deem best, " all the manufacturing establishments known as the Ida Mills Factory in Troy, and the several mills and factories adjacent thereto, during the natural lives of two persons, named, and the survivor, or so long within such lives or life, as in the opinion of his executors, or a majority of them, the same could be done without material injury to the interests of his estate and of those participating in the income thereof; and to distribute and appropriate the net annual income and profits thereof, and also the net annual income of all other his real and personal estate, not otherwise disposed of, over expenses, &c., as follows: one-

Downing *v.* Marshall.

half to be divided and paid over in equal shares to the American Bible Society, the American Home Missionary Society, and the American Tract Society; and the other half to be expended in supporting and maintaining the Marshall Infirmary in the city of Troy, for the support of poor and indigent, sick or lame persons.

By the sixth clause, the executors are directed, after the termination of the two lives mentioned in the fifth clause, to convert into money, or otherwise dispose of in their discretion, all the real and personal estate, devised and bequeathed to them, in trust, and to distribute and deliver over such estate to the several legatees and for the object named in article 5, and in the same proportions as the income is in said article directed to be distributed.

By the seventh clause, in case of the death of his son named in article 3, without lawful issue, then and in that case, he gave, &c., all the real and personal estate devised to him, to the children of his two brothers named, to be divided and distributed among them, &c. In the eighth clause he appoints three executors, and inserts some provisions for their compensation, &c.*

The consideration of this will involved an elaborate examination of the statutes of uses and trusts, of powers, and of wills, and certain rules for the construction of wills. It should be stated that the testator survived his son, who died without issue and that he died in December, 1858. The questions settled by this court were, as I understand from the opinions, 1. That there was no lapse of the devises and bequests to his son, upon the death of such son, in the lifetime of the testator, but they took effect under the seventh clause of the will as substituted devises and bequests, except as to half of the dwelling-house and lot, which, as all the children of one of his brothers were aliens, and therefore incapable of holding real estate in this State, vested in the child of the other brother, not an alien (and who also took under the will the other half of the house and lot, all his brothers and sisters being aliens), and in John W. Downing, the heirs at law of the testator.

---

* Stated on pp. 538, 545.

34

That the bequests of the other two-thirds of the Walcott mortgage, mentioned in the third clause, to the children of his brothers respectively, as a class, were valid legacies.

That the residuary *devise* failed as a *trust*, but took effect as a *power in trust*, so far as the intended beneficiaries were competent to take by devise; that the Home Missionary Society was not competent to take by *devise* or bequest, and that the American Tract Society and American Bible Society, being incorporations, without power to take by *devise*, the residuary devise as to them was void, as to the rents and profits of the land and net income to arise from carrying on the mills, &c. But that these two societies will be entitled to share in the proceeds of the sale on the conversion of the mills and real estate, ultimately to be made as the will directs. That the personal estate trusts were valid in favor of those two societies; that the Marshall Infirmary was authorized to take by devise, and the trust to receive and pay over the rents and profits or annual net income, as well as the trust to sell and pay over the proceeds, were so far valid as powers in trust.

That the real estate mentioned in the residuary clause of the will descended to the heirs of the testator, subject to the trusts declared in these clauses, as a power in trust, so far as the same were declared to be valid. That the Marshall Infirmary is entitled to one half of the rents and profits or net annual income from the death of the testator, and that the other half belongs to the heirs at law; that when the real estate shall be sold, as the will directs, the Marshall Infirmary will be entitled to one-half the proceeds, and the American Bible and American Tract Societies each one-sixth, and the heirs at law the other sixth.

The judgment was reversed and a new trial directed, in which the main questions thus considered should be regarded as disposed of by the decision then made. The new trial has been had, and a judgment has been rendered upon all the questions; and the case, now brought before this court containing many new questions which, after attempting to classify them and show how they arise, for the better understanding of them, I will proceed to consider. I shall regard the questions heretofore decided by this court, as the law of the case, without expressing any opinion upon them, unless new facts have been

shown upon the last trial, which should affect, not the general construction of the will, but the marshaling of the assets. The court expressly declined to decide out of what funds the remaining debts of the testator should be paid, and also ·some other minor questions; the case not then being sufficiently developed.

It now appears that the debts of the testator amounted at the time of his death to some forty two thousand six hundred and seventy-two dollars, besides two disputed claims; one of eight thousand dollars and the other an annuity of two hundred and forty dollars. Also that his personal property, exclusive of the · household furniture, wearing apparel, and plate, the Walcott mortgage, and certain machinery in the factories, and bad debts and some property destroyed by fire, amounted to some twenty-nine thousand six hundred and sixty-five dollars. Also that the executors have received on the Walcott mortgage twenty-nine thousand three hundred and forty-one dollars and sixty-seven cents interest, and four thousand nine hundred and ten dollars principal. That the principal of this mortgage amounted, at the time the testator died, to one hundred and forty-five thousand three hundred and fifty-six dollars and seventy-one cents, and that one hundred and forty thousand four hundred and forty-six dollars and seventy-six cents still remains unpaid, it being payable in yearly installments of five thousand dollars with seven per cent. interest. Thus showing, excluding some property as above, a deficiency of assets to pay debts, amounting to thirteen thousand and nine dollars, besides the two disputed items. It appears that the executors have paid debts to the amount of forty thousand three hundred and seventy-four dollars, but out of what funds or means does not appear.

The referee has found that there was a deficiency, but not the amount. I have produced this thirteen thousand and seven dollars by simply deducting the assets, as he states them, twenty-nine thousand six hundred and sixty-five dollars, from the debts as he states them—forty-two thousand six hundred and seventy-two dollars—leaving thirteen thousand and seven dollars. I am pretty well satisfied that in truth there was very little if any *deficiency* of assets. What did the referee do with

the fourteen thousand dollars owing by Andrews, as noticed hereafter? What about the debt, if any, owing by Tompkins?

I doubt if there was any deficiency; but however this may be, my argument is not affected by this fact or by the amount of the deficiency, if there was any.

The important question now is, out of what portion of the testator's property should the deficiency be made up? This is a question brought under the consideration of this court now for the first time.

The judge, on the trial, heard evidence of the condition of the machinery in the factories, how it was secured or fastened to the buildings, and decided that portions of it were real property, and that other portions not being permanently attached to the realty, but whose fastenings were temporary in their character, were personal property, and must be first sold and the proceeds applied to the payment of the ascertained debts and liabilities of the testator; some of which liabilities are mentioned as contingent, depending upon covenants as yet unbroken, &c., &c., before resort can be had to the specific legacies.

The value of the machinery to be thus removed and sold is not stated; but it is found, as a fact, that it would require an expenditure of one hundred thousand dollars to furnish the mills and factories with all the machinery necessary to advantageously work and run the same; and that such mills and factories cannot be advantageously leased for manufacturing purposes, unless the executors stipulate to make large advances to the tenants to enable them to furnish the mills and factories with necessary machinery, from time to time, during the term. It is also found that the mills and factories, if used for any other purpose than manufacturing, would not yield any net income, and would hardly pay the expenses of care, repairs and taxes. The judgment gives many other directions, most of them in anticipation of contingencies that may, it is supposed, happen, which, with the main provision above stated, are calculated to arrest attention, and provoke, if not necessitate, inquiry whether the will, under the rules imposed upon it, can be executed. Some of these directions will come under particular notice hereafter.

Keeping in mind the leading rule for the construction of wills, that the intention of the testator is to be ascertained, and also that such intention is to be carried into effect, unless, thereby, some well settled rules of law are violated, let us proceed to an examination of the will.

The important question now is, out of what portion of the testator's property should the deficiency be made up.

It is very clear, I think, that the testator intended, after the payment of his debts and funeral expenses out of any personal property that should come to the hands of his executors, to divide his estate into two distinct classes, the property in one class to go to his blood relatives, and the property in the other class to go as charities to certain corporations and an association organized for certain benevolent purposes. The bequests in the first class were specific. The devises and bequests in the second class are *residuary,* and to the executors in trust and for the objects and purposes specified. All the personal property is devoted to the payment of the debts; but as all the legacies in the first class are specific, it follows that they are not to be resorted to for the payment of debts until all the rest of the property is exhausted, unless it appears in considering the whole will, that the testator clearly intended otherwise. There can be no doubt that all the personal property other than the machinery in the mill and factories which were the property of the testator, must be appropriated to the payment of debts, before resort can be had to the specific legacies. The question therefore arises between the specific legacies and that portion of the machinery which, by the Revised Statutes, would be regarded as assets in the hands of the executors, in the absence of anything in the will controlling to the contrary.

By the statute, things annexed to the freehold or to any building for the purpose of trade or manufacture, and not fixed into the wall of a house so as to be essential to its support (2 *R. S.* 83, § 6), are to be deemed assets, and go to the executor or administrator as part of the personal estate. This is the general rule, and the statute is confirmatory of the common law established as between the heir and administrator or executor; and it is argued that a testator cannot by this will withdraw such property from the effects of the statute. This may be so,

when such property is necessary for the payment of debts.; but the statute does not, in my opinion, interfere with the right of the testator to relieve such property from the payment of debts or distribution, in case there remains other property sufficient to pay the debts, though it may be disposed of in specific legacies. The question of construction will remain; and if it clearly appears that the testator intended to exempt this species of property from the payment of debts, resort must be had to his other personal property, in the first instance, not so exempted.

The residue was devised and bequeathed generally, without any qualification other than the trusts and uses specified. On examining them it is seen that the testator directs his executors to *continue* in operation for the benefit of his estate, in such manner as they should deem best, "all the manufacturing establishments known as the Ida Mills Factory in Troy, and the several mills and factories adjacent thereto (all mills and factories owned by me on the same stream), during the actual lives or life of (naming two persons), or so long within their life or lives as, in the opinion of my executors, &c., the same can be done without material injury to the interests of my estate and to those participating in the income thereof, &c." And in the next clause he directs his executors, on the death of the two persons named, to convert all the real and personal estate devised and bequeathed to them in trust, and to distribute and to deliver over such moneys or estate to the several legatees, and for the objects, in the next previous clause named.

It seems to me that here is very clear evidence of the intention of the testator that the machinery belonging to him should remain in the factory buildings, and, with them and the propelling power—water—constitute manufacturing establishments; and I know of no language more appropriate, as evidence of such intention, than that here used by the testator. The language may be subjected to close criticism. Since the introduction of machinery to facilitate the operation of making certain articles for the use of man, the term manufacture has been applied to such operation by machinery; and such articles as are made at the factories mentioned in the will, are now rarely made in any other way than by machinery; and can in no other way be

made profitably. In using the words "manufacturing estab-
lishment" in the connection in which they are used, the testa-
tor intended to include all things which constitute the *estab-
lishment* (a word of large and varied meaning) for the purpose
of manufacture, and he directed his executors to continue them
in *operation*, and to distribute and appropriate the net annual
income or profits thereof; that is, of the "manufacturing estab-
lishment," as he immediately adds, "and also the net annual
income of all other my real and personal estate (not herein
otherwise disposed of)." He anticipated, from continuing in
operation these establishments, net annual income or profits;
and he knew there could be none without the machinery; for
instance, such as the one hundred and eight looms in a weave-
shop declared by the judgment to be assets, and directed to be
sold for the payment of debts, &c. He makes no specific pro-
vision for the purchase of machinery; though such power un-
doubtedly exists, as the executors are directed " to continue in
operation all the manufacturing establishments." They are,
therefore, to be kept up, and in repair. But it never entered
the mind of the testator that the machinery might be taken as
assets by his executors, and thus necessitate the purchase of
other machinery. He made no provision for such a contin-
gency.

Adopting the construction here given, and the will is sensi-
ble—reasonable; and nine-tenths of the appalling array of dif-
ficulties following the construction given by the judgment
under review vanish. By that construction, a will is produced,
which I am sure the testator never contemplated or consid-
ered. His mind was never directed to the contemplation of
such a scheme, and he therefore never considered it with a view
of deciding whether he would approve it, as his last will and
testament. He would have seen the results to follow from the
happening of the contingency which has happened (though
I think he did not anticipate such contingency), and that his
intentions, touching that portion of the trust property which
was employed in manufacturing operations, would be entirely
frustrated.

In my opinion the testator *blended* the machinery and the
factory buildings, and motive power, and the land connected

with them—all of which were necessary for the continuing of the operation of manufacturing—together, under the name " manufacturing establishments," and stamped the whole the character of real property, in contradistinction to personal prop· erty; and I know of no law which prevented his doing so. Of course, he could not be permitted to violate the statutes of uses and trusts, or powers, or perpetuities; but as to these statutes, this court has already considered the case. Therefore, I have considered the question solely as one of intention to be derived from the whole will; and in my opinion, whether the law of conversion has any application to the case or not, the evidence is clear that he intended that the machinery should remain in the factory buildings, and that the " operation " of manufacturing should be *continued*. The evidence of this intention is much stronger than that which the law furnishes by implication, that specific legacies shall not be taken to pay debts until the general legacies have been exhausted. All the machinery which belonged to the testator passed to the executors under the residuary clause, subjected to a trust in connection with certain realty, which, without it, could not be executed in the manner and with the results contemplated by the testator, showing clearly that the machinery and the realty were to be regarded as one thing, blended, wedded, united together in such a way that the severance would destroy the purposes and objects of the trusts. In my opinion, the specific legacies must be resorted to for the payment of debts, before this machinery can be dissevered and removed from the factory buildings.

I think, too, that the defendant converted this machinery into realty, during the time it should be used by the executors for manufacturing purposes in the factory buildings; and that the executors were required, upon the happening of a certain specified event, to convert the whole into money for the purpose of distribution.

I think this position is clearly maintainable upon the law which allows one, who is the absolute owner of property, to change the nature of such property, so that in equity, for certain purposes, real estate is considered as personal, and personal estate as real, and is transmissible and descendible as such. I

shall not now discuss this branch of the law in connection with this case, but will refer to some of the authorities and cases in which it is fully considered and applied under a great variety of circumstances. *Leigh & D. on Conv.* pp. 1, 2, 4, *et seq.* 59, 60. The owner may, as between his real and personal representatives, declare what his land shall be after his death. *Id.* 92. The conversion may depend upon a contingency not in the option of the owner, and happening after his death. *Id.* 19; citing Lawes *v.* Bennett, 1 *Cox Ch. Ca.* 166; and see Ripley *v.* Waterworth, 7 *Ves.* 425; Wheldale *v.* Partridge, 5 *Id.* 388, and notes at end of case; and S. C., 8 *Id.* 227; 1 *Brown C.* 497; and see cases of the *blending* of real and personal property by the testator in *Leigh*, 97–108, *et seq.*; and see 1 *Will. on Ex.* 417, *et seq.*; Hawley *v.* James, 7 *Paige*, 213; Bogert *v.* Hertell, 4 *Hill*, 492.

Indeed, the testator may impose any trusts upon his property after his death not condemned by law. The questions have generally arisen in will cases, upon devises or bequests, or both, to executors or trustees, in trust for purposes specified in the will, and if those trusts are valid, the property will take the character, in equity, imposed upon it by the trusts. In the case now under consideration the trusts were declared void as trusts, not being permissible under our statute; but the court has decided that the trusts are valid as *powers in trust,* and the law of conversion will apply to the powers in trust, in the same manner as it would to valid trusts.

Recurring again to the case as it was left by this court, when it reversed the previous judgment, it is seen, 1. That the trusts as to the real estate are void; and the real estate did not vest in the executors, but descended to the heirs. That the intention of the testator, however, may be effectuated under the statute relating to powers, so far as the beneficiaries are capable of taking under the will. 2. That the Home Missionary Society cannot take. 3. That the American Tract Society, and the American Bible Society, being corporations, could not take by devise. In other words, the testator could not make a valid devise to them, such devise being prohibited by our statute of wills. Hence, these societies cannot take any of the net annual income of the real estate; but that such income, designed for

these societies, goes to the heirs at law. 4. That the Marshall Infirmary, being a corporation, authorized to take by devise, is entitled to half the annual income, &c., and will be entitled, upon a sale of the property, to half the proceeds; and 5. That the two corporate societies will be entitled, upon the sale, to one-sixth each of the proceeds, and the heirs to the other sixth. How does the case now stand?

The specific legacies, to wit, the plate, furniture, apparel, and the Walcott bond and mortgage must be resorted to, to make up any deficiency for paying the debts and any contingent liabilities not connected with or growing out of the manufacturing establishment, if any there be. These legacies are chargeable with such fees of the executors as the law allows for administering them, but not with any portion of the annual sum of one thousand dollars to be paid to the executor, John W. Downing, and the five hundred dollars per annum to be paid to the executor, John Stanton Gould. It is true that the testator in the eighth clause of the will directs that his executors receive these sums annually during the continuance of the trust, in lieu of all poundage or other remuneration, as a compensation for their services in the execution of the trust, and that Downing should occupy the house in Troy with his son, and appropriate the annual income of his son's estate to the support of the joint household establishment and the personal expenses of his son, and receive, over and above that, the one thousand dollars annually. Yet it is to be borne in mind that the devise and bequest to the son never took effect, he having died during the life of the testator, and that all the property that was devised or bequeathed to him passed under the seventh clause of the will, as substituted devises and bequests entirely discharged of any trust, to the children of his brothers; there being, however, a failure as to the substituted devise of half the house and lot, they descended to the heirs at law.

This court has already said that the executor of Downing has no right to the use of the house and lot. In short, no part of the property can vest in the executors in trust, and no duty has been imposed upon them in relation to the house and lot, and none in relation to the bequests other than such as devolves by

Downing *v.* Marshall.

law upon all executors when there are specific legacies. They are, at the proper time, to pay them over, in case they are not required to pay debts.

I have said that I regard that part of the testatator's estate devised and bequeathed to the executors as the *rest and residue*, as a class by itself, and that as to that part of it constituting the manufacturing establishments, peculiar duties of management were imposed upon the executors. The trusts were onerous and responsible. The trusts embraced this property and also all other real estate not constituting parcel of the manufacturing establishments. It was for the executor of those trusts and duties, that the compensation was to be made. The testator says expressly "as a compensation for their services in the execution of this trust." In my opinion the compensation specially mentioned in the will had reference to the execution of the special trusts, and had no relation to the appropriation of assets to the payment of his debts. He had directed that his debts should be paid "as soon as may be, after my decease;" and he did not suppose it necessary to make any special provision compensating his executors for paying the debts, but left this to the law. I have no doubt the executors, on a settlement before the surrogate, will be entitled to their fees for administering the assets in the payment of the debts.

By keeping in mind the scheme of the will, and the peculiar character of the trusts and the property upon which they were left to operate, it seems to me that the executors ought to have but little doubt as to the manner of keeping their accounts. They should be kept with the trust property They are only required to distribute and appropriate the "*net annual income or profits* thereof." They are to continue in operation the manufacturing establishments, and of course, if repairs are necessary, they are to be made; if new or other machinery is necessary, the executors should procure it. The testator tells them to continue in operation the manufacturing establishments *as they shall deem best.* If they demise any of the mills or establishments to others, they may, or they may not, agree to keep the establishments in repair, to furnish new machinery, or that the tenant shall keep in repair, furnish new machinery and pay less rent, and that he shall pay taxes, or not, &c., &c. In short,

all these things are matters of contract and management, entrusted to the executors; and I can see no necessity for, or propriety in, this court giving any directions or advice whatever in this matter. If the donees of the power in trust execute the trusts faithfully, and produce as much net annual income or profits as may be, they will not be liable to the beneficiaries for anything more. If they demean themselves otherwise, they may be accountable. But none of these questions are before the court now. It is found as a fact that the mills and factories cannot be advantageously leased to tenants for manufacturing purposes unless the executors stipulate to make large advances to the tenants to enable them to furnish the mills with necessary machinery from time to time during the term. As to this, the executors will of course exercise their own judgment. They may come under personal obligation for the benefit of the trust estate if they think best, or not, if they please; or they may obviate the difficulty by using any funds they may have, produced by the trust property, and furnish the new machinery from time to time, as it may be needed. All this, as I have said, is matter of management in reference to which the court should give no directions.

In speaking of the resort to the specific legacies to pay debts, I included all contingent liabilities not connected with or growing out of the manufacturing establishments. It is said that in some of the leases made by the testator he entered into covenants relating to machinery, &c. In my opinion, if any liability has arisen or shall arise on such covenants, it is to be satisfied from the income of the trust property.

[The opinion then proceeded to apply this principle to a number of outstanding leases of factories, and to correct the provisions of the judgment in details which involve nothing of interest except for the determination of the case at bar.]

It is found as a fact that there are two claims against the testator which the executors have disputed and rejected—one of eight thousand dollars, and the other of an annuity of two hundred and forty dollars. As to these items, the judgment directs that the executors retain in their hands out of the Walcott mortgage, to provide a fund for their payment, and for the costs

and expenses of contest, the sum of thirteen thousand dollars, till they shall ascertain, by sale of certain property mentioned, which includes the machinery declared to be assets, and all the other property mentioned, whether such property is sufficient, after the payment of the admitted claims, costs, &c., to provide such fund of thirteen thousand dollars; and if it shall be sufficient, then the authority to retain the fund of thirteen thousand dollars shall cease, &c. I can see no propriety in such a judgment. No action has been commenced on the eight thousand dollar claim, and, it was said, and, I think, shown, on the argument that the six years statute of limitations had attached to the eight thousand dollar claim. But waiving this, the statute has made ample provision for the protection of the executor in such case. An executor is prohibited from paying any legacy short of a year from the granting of letters testamentary, unless the will directs payment sooner; and in such case the executor may require a bond to refund, if it should be necessary to pay debts, &c. He may after six months publish a notice requiring creditors to present their claims, at or before a day named, which may be at the end of six months. He may enter into agreement with a claimant to refer any matter of controversy. He may dispute and reject the claim, and if it has not been referred, the claimant must bring his action in six months or the claim will be barred. If the claim is not presented within the six months from the first publication of the notice, and a suit is brought upon it, the executor is not to be chargeable for any payment of a legacy, &c., before the suit is commenced. Here is a complete system by which the executor may protect himself. 2 *R. S.* 87, *et seq.* As to the claim of an annuity of two hundred and forty dollars, it arises on a written agreement to pay Miss Alice Youart twenty dollars a month during her natural life, for the attention to the testator's son, John. This agreement is dated August 4, 1846. I will not stop to inquire whether an annuity was *granted* by this instrument, or what the rights of the parties under it were when the testator died, the son having died some time before. The court, in my opinion, should give no direction upon this matter, as the general law furnishes a sufficient guide and protection.

[The opinion then proceeded to correct some other errors

not important to notice in this report, and then concluded as follows:]

In short, the general scheme of the judgment, beyond the provisions founded upon the previous directions of the court, is wrong; and I think instead of attempting to follow and correct the special provisions of the judgment it will be well for this court to indicate briefly the proper judgment. Before attempting to do so it is necessary to go back and consider a portion of the case in an aspect not yet noticed, and which does not seem to have particularly arrested the attention of this court when the cause was previously before it.

The trusts, or trust, all failed, and the real estate descended to the heirs at law. But the trusts became powers in trust, and as such are to be executed so far as they are lawful and the beneficiaries can take. They are unlawful and void as to the Home Missionary Society. They are inoperative and void as to the net annual income and profits of the property charged with the powers in trust, which were to be paid to the American Tract and American Bible Societies. As a consequence, the heirs at law take these net annual incomes and profits, being one-half, and I suppose, discharged of the power in trust. As to these incomes and profits, the intention of the testator has failed, and they remain entirely undisposed of. It is a settled rule of law that the heir at law takes whatever is undisposed of, whether the testator so intended or not. *Leigh & D. on Conv.* 99; 1 *Will. on Ex.* 417; Wheldale *v.* Partridge, 5 *Ves.* 388 and notes at end of the case, Bost. ed.; Bogert *v.* Hertell, 4 *Hill*, 492, 495, 496; Hawley *v.* James, 7 *Paige*, 213. In the last case the lands were in Illinois, and they were devised upon trusts to sell and invest the proceeds in lands in this State,—upon trusts declared to be void, though they would have been valid in Illinois, if the reinvestment had been directed to be made in lands in that State. The chancellor held that the legal title vested in the executors, but as the trusts, upon which the lands were to be sold and the proceeds invested, were void, he declared that the heirs were entitled to the land, and that the executors should convey to them. In the present case the title to the lands did not vest in the executors. They have only a power in trust, to manage and pay over the net income, and as the trusts are de-

clared void, the power is gone, and there is no necessity of any conveyance by the executors to the heirs, the title being in them. I see no escape from the position that the heirs at law own and have a right to manage the one-half of the property intended to be vested in the executors in trust, in common with the executors, and to take, as heirs, the one-half of the annual income or profits wholly discharged of any interference by the executors under any claim of powers in trust.

Whether the powers in trust to convert all the property into money and distribute it, as provided in the sixth clause of the will, after the termination of the two lives, will attach and operate upon the one-sixth, to which the heirs at law are then to be entitled, presents a very different question. The rule seems to be that when the purposes of the testator require a sale of the whole land, and there is only a partial disposition of the produce, the sale is to be made, and the heir will take, as money, the part undisposed of. See 1 *Will. on Ex.* 417, and cases cited. In this case the part undisposed of is the one-sixth intended for the Home Missionary Society, which, the intention having failed, goes to the heirs. I am inclined to apply this principle to the case, and hold that the power in trust to convert into money, &c., will attach to this one-sixth. It may be that when the time arrives for exercising the power, that a sale of five-sixths of the property could not be advantageously made. The one-sixth may at that time be vested in numerous persons, and the purchaser of the five-sixths would probably be unwilling to become a tenant in connection with other persons more or less numerous. It is true partition could be had. But upon the whole, with some hesitation, I am of the opinion that the power in trust to convert into money, &c., should be held to attach to this one-sixth, and that the executors will have the power to sell the property as a whole. Such seems to have been the opinion of this court, as Judge COMSTOCK says, without discussing the point, " such real estate will be ultimately sold as the will directs."

It is declared by the judgment now under review that the trustees (executors) are at liberty to terminate the trusts and powers in trust, at any time when, in the opinion of a majority of them, the powers in trust cannot be continued, and the man-

ufacturing establishments cannot be continued in operation, without material injury to the testator's estate, and to those participating in the income thereof, although the time mentioned may not have terminated; that is, the two lives. And then follow directions touching the proceeds in such event, &c.

Upon this point, this court has hitherto said nothing. The question arises upon certain language in the fifth clause of the will, following the direction to continue in operation the manufacturing establishments during the lives specified and the longest liver, " or so long within their life or lives as in the opinion of my said executors, or a majority of them, the survivor or survivors of them, the same can be done without material injury to the interest of my estate, and of those participating in the income thereof." Then follows the direction for the distribution and appropriation of the net annual income, &c. There is no express direction or power here to sell anything, not even the manufacturing establishments. The direction is to operate them during the limitation, or so long within the limitation as, in their opinion, the same can be done without injury to the interest of his estate. It is the operating of the manufacturing establishments, which is made to depend upon the opinion of the executors; or, rather, the time of operating them may be shortened; and this is left discretionary with the executors, depending upon an opinion, come to by them, of a certain character. No reference to this provision is made in the next clause, ordering and directing, on the termination of the two lives, the conversion into money of all the trust property. If any power to sell is contained in the fifth clause, it is to be raised by implication, and it will then only apply to the manufacturing establishments which the executors shall have decided no longer to operate. It was of them the testator was speaking. He immediately after directs the distribution of the net annual income or profits " thereof," that is, of the manufacturing establishments, " and *also* the net annual income of all other my real and personal estate, not herein otherwise disposed of," &c. The power to sell the manufacturing establishments cannot be fairly implied. The establishments were in operation when the testator died, or he assumed, when he made his will, that they would be; and he directs the continuation

of their operation for a term uncertain, which, however, mihgt continue a quarter or half a century ; and he foresaw that there might be periods during this time that the establishments could not be profitably operated, and he therefore provided that the operation need not go on so *long* within that time as in the opinion of his executors, &c. In other words, he says to his executors, you may suspend operations " so long within " the time prescribed as you shall think the operation of manufacturing cannot be done without injury to my estate. Such is the fair and natural construction of the language ; and, in my opinion, the idea of a sale was not, in using the language in this clause, in the mind of the testator. He took up the question of conversion into money subsequently, in an independent clause, and declared his entire will upon it, in a way giving no countenance to the idea that a sale could be made at any other time or under any other circumstances. If we should find the power, by implication, to sell the manufacturing establishments, it could not be extended to the other trust property, and there was other real estate, a water-power out on lease, land in Florida, &c., &c. As to such property the power in trust would continue, and the power to convert could not be exercised until the termination of the two lives. I am quite satisfied that no power was given to sell any of the trust property except as provided in the sixth clause, to wit, on the death of Joseph Marshall Carville, and Joseph Marshall.

We have seen from the eighth clause in the will that the exeuctor Downing, as a part of the compensation for his services in the execution of the trust, was to reside in Troy, and occupy the same house with the testator's son, and appropriate the annual income of the son's estate to the support of the joint household establishment and the personal expenses of the son, and over and above that to receive one thousand dollars annually. It appeared on the trial that the contents of the will were communicated to Downing, who then lived in Philadelphia, and that the testator invited him to accept the trust and come to Troy and assist, &c., and he did so, in June, 1855, and occupied the house in question. The court ascertained and found that the cost of his support and maintenance in a suitable household establishment in Troy, exclusive of rent, would

35

be one thousand seven hundred dollars, and including rent, two thousand two hundred dollars, and the judgment declares that Downing is entitled to this sum annually, in addition to the one thousand dollars, and these sums are adjudged to form a part of the expenses of executing the powers in trust contained in the fifth clause in the will; but the trustees must procure payment out of the property passing under the fourth clause of the will, after the personal property passing thereunder has been applied to the payment of admitted claims and contingent liabilities, as before directed in the findings of law, and can in no event resort to the Walcott mortgage, plate, furniture or apparel, for payment of any part thereof.

I will not now pause to attempt to put in operation the machinery by which the compensation of the executors is to be made, but I will notice the idea (as it is often repeated in the judgment, and has, as I think, produced much confusion, and led to many very special clauses) of personal property *passing* under the fourth clause of the will being applied to the payment of admitted claims against the testator, &c. It is somewhat difficult to understand this. The fourth clause devises and bequeaths to the executors the *rest* and *residue* of the testator's real and personal estate in trust, &c., and this was after he had ordered his debts to be paid out of his personal property. Of course, no portion of his personal property necessary to pay debts ever passed, or could pass, to the executors under this *residuary* clause. If the court below was right in holding that certain machinery was personal property, and that it was required for the purpose of paying debts, it never passed under the fourth clause. It is not supposed that the specific legacies passed under this clause, but that the machinery did. I claim that the machinery passed under the residuary clause, whether it is regarded as personal or real property, because with the special legacies there was personal property enough to pay the debts; and I hold that there is clear evidence of the intention of the testator that the specific legacies should be resorted to for the payment of debts before the machinery should be taken for such purpose. But to return.

This judgment of two thousand two hundred dollars annually to the executor Downing cannot be sustained in this case.

Downing *v.* Marshall.

This is an action to obtain the construction of the will, and for directions for its execution. The will begins to speak on the death of the testator. At that time he had no son John. He died before his father. The bequest and devise to him never took effect, but the same property, real and personal, devised to the son, passed to other persons upon the death of the testator, and the provisions in the will in favor of Downing, touching the occupation of the house and the appropriation of the income of John's estate to the support of a joint household establishment, were inoperative at the time the testator died. They were no part of the will. The contingency mentioned in the seventh clause of the will, to wit, the death of his son John, had happened, and as this court held, the legacies provided for John when the will was made were given to others, as substituted legatees. It is quite certain that the testator intended to make a provision by which Downing should be entitled to a compensation beyond the annual one thousand dollars, but such intention has not been accomplished by this will. It is very probable that Downing ought to have more than one thousand dollars annually for his services, and he may perhaps be entitled to it in some other form of proceeding, but it is entirely clear to my mind that the will gives him no more than the one thousand dollars. It is the will and the rights under it that we are expounding.

I think I have noticed the most material errors in the judgment. The record shows thirty distinct findings of fact, and it contains twenty-eight conclusions of law thereon, which are carried into and constitute the judgment. All the parties filed numerous exceptions, and they all appeal.

I will proceed to indicate, as briefly as may be, the judgment which I think this court should direct.

1. The children of the testator's brothers, James and Jeremiah, took as a class, each class the one-half of the plate, household furniture, wearing apparal, and the Walcott bond and mortgage, as specific legacies.

2. That James E. Marshall, son of James Marshall, took as devisee, one-half of the house and lot; and as heir at law, one-fourth; and John W. Downing took, as heir at law, the other one-fourth.

3. The residuary devise and bequest failed as a trust, in respect to the real estate, and the real estate descended to the heirs at law, James E. Marshall and John W. Downing, subject to powers in trust of the same character as the trusts attempted to be created so far as the intended beneficiaries are competent to take by devise.

4. The Home Missionary Association * is incompetent to take by devise or bequest, and therefore as to the one-sixth of the property mentioned in the residuary clause of the will, the power in trust is void and inoperative, and the said heirs at law are entitled to this one-sixth.

5. The American Tract Society † and the American Bible Society having no power to take real estate by will, as to them the powers in trust relating to the real estate referred to in the said residuary clause, are void as to the net annual income or profits; and these descended to the said heirs at law. The powers in trust for the sale of the said property at the termination of the lives of Joseph Marshall Carville and Joseph Marshall are valid, and said two societies will be entitled, on such conversion of the property into money, to one-sixth thereof each.

6. The Marshall Infirmary is a corporation, with power to take by devise, and the powers in trust, as to it, are valid, and such corporation is entitled to one-half of the net annual income or profits of the property referred to, in the fourth clause, as the rest and residue of the testator's estate real and personal; and it will be entitled, upon the conversion of such property into money, to one-half of the proceeds.

7. As the case shows that there is a deficiency of assets to pay debts, without a resort to the specific legacies or to certain machinery in the manufacturing establishments which belonged to the testator; and as it appears to the court that the intention of the testator was that such machinery should be, and remain and constitute a portion of the manufacturing establishments, as a whole, for the purposes of the will, and that it should not be dissevered from the buildings and sold to pay debts—the specific legacies, to wit, the plate, household

---

* Power to take by devise was conferred by charter in 1871.
† Power to take by devise was conferred in 1866.

furniture, wearing apparel, and the Walcott bond and mortgage, are the assets in the hands of the executors, to be resorted to for the purpose of making up such deficiency. All the other personal property applicable to the payment of debts, must first be used for the payment of debts; this will not include any of the machinery, before such plate, funiture, apparel, and bond and mortgage are resorted to.

8. There is no power in trust to sell any of the property referred to in the fourth residuary clause of the will, until the termination of the two lives specified, and then the power will apply to all the property as a whole, unless in the mean time there shall have been a partition.

9. The heirs at law take the one-half of the net annual income and profits, unaffected by the powers in trust. In other words, they take the one-half of the property referred to in the residuary clause, and intended by the testator to be vested in the executors in trust, as heirs at law, subject only to the power in trust to convert such property into money on the death of the two persons named, and in the mean time they have, in common with the executors, the right of use and management.

10. No portion of the personal property required for the payment of debts, or any portion of the specific legacies can be taken for the purpose of purchasing or supplying machinery, or aiding in any way the manufacturing establishments, or paying any liabilities upon covenants in leases contingent at the death of the testator, if any such there were, or, in short, for any other purpose than the payment of debts and the specific legacies. As to the real estate, the manufacturing establishments inclusive, the executors, so far as their powers in trust extend, will keep their accounts with such property, and this execution of these powers has no connection with their duties as executors. No direction is, or should be, given as to the two claims disputed and rejected, one eight thousand dollars, and the other called an annuity, of two hundred and forty dollars, or any other such claims, if any there be.

11. John W. Downing is not entitled, under the will, to two thousand and two hundred dollars annually for his services, over and above the one thousand dollars mentioned in the will.

12. The court has a discretion as to the funds chargeable

with extra costs and counsel fees; and in this case, such costs, &c., are directed to be paid, one-third out of the specific legacies; one-third by the heirs at law, chargeable upon their one half of the property referred to in the residuary clause of the will, and the other third to be paid by the Marshall Infirmary, and chargeable upon their one-half of such property, and to be paid out of the net annual income, &c., by the executors, if such income will justify such payment.

All the judges concurred in this opinion, and in another delivered by the same judge at the same time, on the question of costs (reported in 37 *N. Y.* 380), and fixed the allowances to the plaintiffs at two thousand dollars.

Judgment appealed from reversed, and judgment to be entered in accordance with these opinions.